

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

GERALD McGHEE, an individual, on
behalf of himself and all others similarly
situated,

          Plaintiff-Appellee,

v.

NORTH AMERICAN BANCARD, LLC,

          Defendant-Appellant.

No. 17-56248

DC No. CV 17-0586 AJB

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted December 6, 2018
Pasadena, California

Before: TASHIMA and WARDLAW, Circuit Judges, and PRATT,[**] District
Judge.

Defendant-Appellant North American Bancard, LLC ("NAB"), appeals the

district court's order denying its motion to compel arbitration in a putative class

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Robert W. Pratt, United States District Judge for the
Southern District of Iowa, sitting by designation.

action filed by Plaintiff-Appellee Gerald McGhee ("McGhee"), a merchant who signed up for NAB's credit card processing service. We have jurisdiction under 9 U.S.C. § 16(a)(1)(B), and we review de novo the denial of a motion to compel arbitration. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). We affirm.

McGhee did not assent to the arbitration clause on the User Agreement webpage. Although McGhee assented to the Terms and Conditions when filling out the online application by clicking on the button next to the "I have read and agree to the Terms and Conditions" hyperlink, the Terms and Conditions webpage did not provide constructive notice to a reasonably prudent user that the User Agreement was a part of the contract between NAB and its customers. *See id.* at 1178–79 ("[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice."). Here, the link to the User Agreement webpage on the Terms and Conditions webpage did not require any affirmative action to demonstrate assent; the text simply stated, "View the User Agreement here" and did not indicate that the User Agreement was

incorporated into the Terms and Conditions.  Further, the Terms and Conditions webpage contained documents and links to more document that were exclusive to each other.

Moreover, the twenty-fourth paragraph on the Terms and Conditions webpage contained a merger clause that stated, "[t]he Agreement, including these Terms and Conditions and the Merchant Application, constitutes the entire Agreement between Merchant, Global Direct, and Member and supersedes all prior memoranda or agreements relating thereto, whether oral or in writing."  Based on the layout of the Terms and Conditions webpage and this merger clause, a reasonably prudent user would not expect to need to look for hyperlinks to webpages other than the Terms and Conditions webpage or the webpage that contained the application for the credit card processing service.  The onus fell on NAB to put its customers on notice of the binding terms of the contract in a clear and straightforward way.  *See id.* at 1179.  NAB failed to do so, instead causing confusion through the convoluted placement of contradictory documents on its website.  Therefore, McGhee did not assent to the arbitration clause on the User Agreement webpage when assenting to the Terms and Conditions.

Nevertheless, NAB argues that the district court's order should be reversed because McGhee failed to provide a declaration or other similar evidence to rebut

NAB's alleged "prima facie" showing that McGhee assented to the User Agreement. But, for the reasons listed above, NAB did not make a "prima facie" showing that McGhee assented to the User Agreement and the arbitration clause; therefore, it was unnecessary for McGhee to provide rebutting evidence. *See id.* at 1177 ("[W]here . . . there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.").

**AFFIRMED.**